## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Ricky A. ROBERTS<br><br>and<br><br>Sherry MASSENGALE<br><br>v.<br><br>DEPUTY MATTHEW S. GREINER, in his individual capacity;<br><br>CORPORAL JASON WISCOMBE, in his individual capacity;<br><br>SERGEANT TYLER HENDRICKSON, in his individual capacity;<br><br>SHERIFF JEFF RICHARDS, in his individual and official capacities;<br><br>UNDERSHERIFF KIEL LASSWELL, in his individual and official capacities;<br><br>FRANKLIN COUNTY (KANSAS) SHERIFF'S OFFICE<br><br>COUNTY OF FRANKLIN, KANSAS; and<br><br>UNKNOWN FRANKLIN COUNTY SHERIFF'S OFFICERS, in their official and individual capacities | Case No. _____ |

## **COMPLAINT**

COME NOW, Plaintiffs Ricky A. Roberts ("Roberts") and Sherry Massengale ("Massengale") (collectively "Plaintiffs"), and for their Complaint against Deputy Matthew S. Greiner ("Greiner"), Corporal Jason Wiscombe ("Wiscombe") Sergeant Tyler Hendrickson ("Hendrickson") Sheriff Jeff Richards ("Richards"), Undersheriff Kiel Lasswell ("Lasswell"), the

1

County of Franklin County, Kansas ("Franklin County"), the Franklin County Kansas Sheriff's Office ("FCSO"), and as yet unknown Franklin County Sheriff's Officers in their official and individual capacities ("Unknown Officers") (collectively "Defendants"), state and allege as follows:

## I.    NATURE OF THE CASE

This is a civil rights action arising from the unlawful seizure, assault, battery, excessive force, false arrest, unconstitutional conditions of confinement, and malicious abuse of legal process inflicted upon Plaintiff Roberts by Defendant Greiner and other officers of the FCSO.  This action further arises from the unlawful seizure, assault, battery, excessive force, and deprivation of property inflicted on Massengale from October 19, 2024 through October 21, 2024.  Greiner instigated a physical fight with Roberts without legal justification, used unreasonable and excessive force, including twice tasing Roberts, causing Roberts to suffer severe hypertension, abnormal heart function, and other injuries.

Roberts was then falsely arrested, confined for three (3) days, and denied necessary blood-pressure medication, hygiene, and clean clothing, in violation of the Fourth and Eighth Amendments and Sections 9, 15, and 20 of the Kansas Bill of Rights.  Massengale was also falsely arrested by Wiscombe and Hendrickson, confined in the Franklin County Adult Detention Center, and wrongfully deprived of her property for over a year by the FCSO.

Richards and Lasswell failed to train, supervise, or discipline (a) Greiner despite knowledge of Greiner's history of abusing his authority, and (b) Wiscombe and Hendrickson on the grounds for lawful arrest, citizens' rights and supervisory duties; and (c) other responding officers and  jail staff of the FCSO in the monitoring, care and treatment of Roberts and similarly situated inmates with serious medical conditions.  Franklin County and the FCSO are liable for the

misconduct of their officers under the *Monell* doctrine (*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978)) because that misconduct arose from the official policies, customs and practices of the FCSO and the County regarding appropriate use of force and appropriate conditions of confinement, and Sheriff Richards and the County's and Sheriff Richards' failure to train, supervise and discipline its officers and staff.

Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and all other relief permitted by law.

## II.    JURISDICTION AND VENUE

1.    This Complaint seeks remedies under 42 U.S.C. § 1983 and 1988, alleging violations of the Fourth and Eighth Amendments to the Constitution of the United States of America, as well as the laws of the State of Kansas.

2.    This Court has jurisdiction over the claims brought in this Complaint under 28 U.S.C. §§ 1331, 1343, and 1367.

3.    Venue is proper in the U.S. District Court for the District of Kansas under 28 U.S.C. § 1391(b)(2) because all events or omissions giving rise to the claims asserted herein occurred in Franklin County, Kansas.

## III.    PARTIES

4.    Roberts is a resident of Rantoul, Franklin County, Kansas.

5.    Massengale is a resident of Rantoul, Franklin County, Kansas.

6.    Greiner was at all relevant times a Deputy Sheriff in the FCSO acting under color of Kansas law.

7.    Wiscombe was at all relevant times a Deputy Sheriff Corporal, having intermediate supervisory authority in the FCSO, and acting under color of Kansas law.

3

8. Hendrickson was at all relevant times a Deputy Sheriff Sergeant, having intermediate supervisory authority in the FCSO, and acting under color of Kansas law.

9. Richards is the Sheriff of Franklin County, Kansas and was responsible for training, supervision, and discipline of FCSO deputies and jail staff at all relevant times.

10. Lasswell is the Undersheriff of Franklin County, Kansas and shared supervisory responsibility over FCSO deputies and jail operations with Richards at all relevant times.

11. The FCSO is the Sheriff's Office for the County of Franklin, Kansas.

12. Franklin County is a municipal entity responsible for the policies, customs, and practices of the FRSO.

13. Unknown Officers participated in Roberts's unlawful detention, arrest, denial of medical care, and mistreatment.

14. Unknown Officers participated in Massengale's unlawful detention, arrest, mistreatment, and deprivation of property.

## IV.  FACTUAL ALLEGATIONS

15. On October 19, 2024, Greiner arrived at Roberts's residence in Rantoul, Franklin County, Kansas to investigate the alleged theft of a $40.00 animal trap belonging to a neighbor.

16. Greiner had already viewed video showing Roberts and Massengale removing their cat from the animal trap and placing the animal trap in plain view in Roberts's driveway, which made clear that no theft had occurred.

17. Upon arriving at Roberts's residence, Greiner approached Roberts in an aggressive, escalatory manner, treating the situation as if he was investigating a felony.

18. Despite not asking Roberts his name or stating his purpose, Greiner immediately demanded that Roberts produce identification.

4

19. Roberts, being on his own property, did not have identification on his person, and was not legally required to produce identification.

20. Roberts attempted to explain the situation to Greiner and truthfully answered Greiner's questions.

21. Without stating that Roberts was being detained or arrested, and without probable cause, Greiner grabbed Roberts when Roberts stepped back in an attempt to de-escalate the encounter.

22. A physical struggle ensued, during which Roberts repeatedly attempted to stop the fight and stated his name.

23. Greiner nevertheless threw Roberts to the ground and tased him twice, including once in the groin.

24. Roberts suffered dangerously high blood pressure, abnormal heart function, and severe bruising as a result of  Greiner's attack as noted by emergency medical personnel who arrived on the scene following the attack.

25. After assaulting Roberts, Greiner and other officers falsely arrested Roberts for felony aggravated assault on a law enforcement officer, interference with law enforcement, and misdemeanor theft.

26. Video evidence from Greiner's patrol car shows officers conspired to "upcharge" Roberts by fabricating a claim that Roberts placed Greiner in a headlock—an allegation contradicted by the video evidence.

27. Roberts was confined in the Franklin County Adult Detention Center, located in Ottawa, Franklin County, Kansas from October 19, 2024 to October 21, 2024.

28.     During this confinement, FCSO jail officers denied Roberts his prescribed blood-pressure and heart medications, despite knowing his dangerously elevated readings in that they were advised of same by emergency medical personnel who arrived on the scene after Greiner's attack on Roberts.

29.     FCSO jail officers also refused to allow Roberts to shower or change clothing, causing emotional distress and physical discomfort.

30.     Massengale reasonably feared for her own safety during Greiner's October 19, 2024 assault on Roberts and feared that Greiner might assault her as well.

31.     Massengale suffered emotional distress, fear, anxiety, and trauma from witnessing the assault and the subsequent arrest of Roberts.

32.     Massengale was then subjected to an unlawful investigatory detention and arrested without probable cause.

33.     Massengale was deprived of her property, including but not limited to her cellular phone, for over a year without a legal basis for such deprivation.

34.     The deprivations described above and committed against Roberts and Massengale were intentional, retaliatory, and constituted cruel and unusual punishment.

35.     Richards and Lasswell failed to train or supervise Greiner, Wiscombe, Hendrickson and FCSO jail staff, despite knowing, at least in Greiner's case, there was a history of Greiner abusing his authority.

36.     As a direct result of Defendants' conduct, Roberts suffered physical injury, emotional distress, loss of liberty, reputational harm, and economic damages, including lost income well in excess of $75,000.00 due to his inability to manage his businesses during the criminal proceedings.

6

37. As a direct result of Defendants' conduct, Massengale suffered physical injury, emotional distress, loss of liberty, reputational harm, and economic damages, including lost income exceeding $8,580 due to her suspension from her job during the pendency of criminal proceedings against her.

38. Greiner is not entitled to qualified immunity for his actions against Roberts in that Roberts has alleged facts showing that Greiner violated his clearly established Fourth Amendment rights, at the time of the events in October 2024, it was clearly established that an officer may not use significant force—including grabbing a person without warning, throwing him to the ground, or deploying a taser—against an individual who poses no immediate threat, is not resisting, and is suspected of, at most, a minor offense.

39. Roberts posed no threat, was not resisting, and was suspected of no crime that could justify the level of force used by Greiner who escalated a non-violent neighborly dispute into a physical confrontation, grabbed Roberts without warning, initiated a fight, threw him to the ground, and tased him twice, including once in the groin.

40. At the time, Roberts had truthfully answered Greiner's questions, had stepped back to de-escalate the encounter, and had not been told he was under arrest or detention.

41. No reasonable officer could believe that Greiner's conduct towards Roberts was lawful and therefore Robert's constitutional rights were violated by Greiner in that no reasonable officer could believe it permissible to attack a non-threatening homeowner, initiate a physical fight, or deploy a taser against a person who was not resisting and who had committed no crime.

42. Existing law placed the unlawfulness of Greiner's actions beyond debate and therefore qualified immunity does not shield Greiner from liability for his use of excessive force and unlawful seizure of Roberts.

43.     Greiner, Wiscombe, and Hendrickson are not entitled to qualified immunity with respect to Massengale in that Massengale has alleged facts showing that Greiner, Wiscombe and Hendrickson violated her clearly established Fourth Amendment rights in that at the time of the events in October 2024, it was clearly established that an officer may not arrest or detain a person without probable cause, may not use force to handcuff or physically restrain a non-resisting, non-threatening individual, and may not seize or retain personal property without a warrant or legal justification.

44.     Massengale posed no threat, did not interfere with any officer, and was not suspected of any offense that could justify her arrest.

45.     Massengale merely called 911 to request a supervisor and approached only close enough to obtain Greiner's badge number.

46.     Nonetheless, Wiscombe and Hendrickson arrested her without probable cause, handcuffed her, physically restrained her, booked her into jail, and seized her phone without a warrant—retaining it for nearly a year.

47.     The misdemeanor theft charge later filed against Massengale was dismissed.

48.     Under existing law, no reasonable officer could believe such conduct towards Massengale was lawful and therefore the violation of Massengale's constitutional rights were obvious in that no reasonable officer could believe it permissible to arrest a bystander who requested a supervisor, to handcuff and jail a non-resisting individual without probable cause, or to confiscate and retain her phone without a warrant.

49.     Qualified immunity does not shield Greiner, Wiscombe, or Hendrickson from liability for their unlawful seizure, excessive force, and unlawful deprivation of Ms. Massengale's property.

## V.    CAUSES OF ACTION

### COUNT I – Excessive Force
*Roberts v. Greiner (42 U.S.C. § 1983, Fourth Amendment)*

50.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

51.    Greiner used force to seize Roberts within the meaning of the Fourth Amendment in that on October 19, 2024, at Roberts's residence, Greiner grabbed Roberts without warning, initiated a fight, threw him to the ground, and tased him twice, including once in the groin, and then detained and arrested him.

52.    Greiner was acting under color of Kansas law at all relevant times in that his actions towards Roberts were purportedly performed pursuant to his exercise of official responsibilities as a sheriff's officer and were purportedly related to the performance of a police duty.

53.    The force Greiner used in seizing Roberts was objectively unreasonable under the circumstances because the severity of the alleged offense was minimal, Roberts posed no immediate threat to the safety of the officers or others, and Roberts was not resisting or attempting to flee.

54.    Greiner's actions were without legal privilege or justification and were carried out under the asserted authority of law despite the absence of any facts supporting an arrestable offense in that Greiner had already viewed video showing Roberts and Massengale removing their cat from the animal trap and placing the supposedly animal trap in plain view in Roberts's driveway, which made clear that no theft had occurred .

55.    As a result, Roberts suffered physical injuries, emotional distress, and other compensable injuries.

## COUNT II – Unlawful Seizure / False Arrest

*Roberts v. Greiner and Unknown Officers (42 U.S.C. § 1983, Fourth Amendment)*

56.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

57.     Greiner and other Officers of the FCSO seized and arrested Roberts on October 19, 2024 within the meaning of the Fourth Amendment in that they prevented him from leaving, placed him in handcuffs, and removed him from his residence.

58.     Defendants were acting under color of state law at all relevant times in that their actions towards Roberts were purportedly performed pursuant to their exercise of official responsibilities as sheriff's officers and were purportedly related to the performance of a police duty.

59.     The seizure of Roberts was unlawful because the Defendants lacked probable cause or any reasonable basis to believe that Roberts had committed, was committing, or was about to commit a crime that warranted seizure or arrest.

60.     A reasonable person in Roberts's position would not have felt free to leave given the presence of armed and uniformed officers, and Roberts was physically restrained and taken into custody.

61.     Defendants' actions violated Roberts' clearly established Fourth Amendment rights.

62.     As a direct and proximate result of the unlawful seizure, Roberts suffered loss of liberty, emotional distress, reputational harm, and other compensable injuries.

**COUNT III – Conditions of Confinement / Deliberate Indifference**
*Roberts v. Jail Officers, Sheriff Richards and Undersheriff Lawell, (42 U.S.C. § 1983, Eighth Amendment)*

63.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

64.     Officers of the Franklin County Adult Detention Center, Richards, and Lasswell subjected Roberts to conditions of confinement that posed a substantial risk of serious harm.

65.     Defendants were acting under color of state law at all relevant times in that their actions towards Roberts were performed pursuant to their exercise of official responsibilities as sheriff's officers and were purportedly related to the performance of a police duty.

66.     During his time of confinement from October 19, 2024 to October 21, 2024 at the Franklin County Adult Detention Center in Ottawa, Kansas, Roberts was denied necessary medical care, including access to his prescribed and necessary blood pressure and heart medication.

67.     During his time of confinement from October 19, 2024 to October 21, 2024 at the Franklin County Adult Detention Center in Ottawa, Kansas, Robert was denied access to basic hygiene, including the ability to shower and change clothing.

68.     Defendants knew of Roberts's serious medical needs including but not limited to the necessity of his prescribed medication, and the risks created by conditions that denied Roberts access to same, yet Defendants intentionally or recklessly disregarded those risks.

69.     Defendants' deliberate indifference to Roberts' health and safety violated Roberts' clearly established constitutional rights under the Fourteenth Amendment (and the Eighth Amendment to the extent applicable).

70.     As a direct and proximate result, Roberts suffered physical injury, pain, emotional distress, and other compensable harm.

11

## COUNT IV – Assault  (Kansas Tort Claims Act)
*Roberts v. Deputy Greiner*

71.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

72.    Greiner intentionally engaged in conduct that placed Roberts in reasonable apprehension of imminent harmful or offensive contact.

73.    Greiner on October 19, 2024 at Roberts's' residence acted aggressively, approached Roberts in a threatening manner, and, as a uniformed and armed sheriff's officer, had the apparent present ability to inflict such contact.

74.    Greiner's action was without legal privilege or justification in that Greiner had already viewed video showing Roberts and Massengale removing their cat from the animal trap and placing the supposedly animal trap in plain view in Roberts's driveway, which made clear that no theft had occurred, and in that Roberts was actively attempting to de-escalate the situation.

75.    Roberts did not consent to Greiner's conduct, and a reasonable person in Roberts' position would have feared immediate bodily harm.

76.    As a direct and proximate result of Greiner's assault, Roberts suffered emotional distress, fear, and other compensable damages.

## COUNT V – Battery  (Kansas Tort Claims Act)
*Roberts v. Deputy Greiner*

77.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

78.    Greiner intentionally caused harmful and offensive contact with Roberts on October 19, 2024 at Roberts' residence by physically grabbing, restraining, striking, and tasing Roberts without legal justification or consent.

79.     Greiner's actions were intentional, unreasonable, and outside the scope of lawful authority given that Greiner knew no theft had occurred prior to approaching Roberts and given that Roberts was actively attempting to explain himself and de-escalate the situation.

80.     Greiner's action was without legal privilege or justification.

81.     The contact from Greiner on October 19, 2024 caused Roberts physical injury, pain, and emotional distress.

82.     As a direct and proximate result of Greiner's battery, Roberts suffered damages.

### COUNT VI – False Imprisonment (Kansas Tort Claims Act)
*Roberts v. Deputy Greiner and FRSO Officers*

83.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

84.     Greiner and other responding officers and jail officers of the FCSO intentionally restrained, transported, and confined Roberts against his will by arresting him, placing him in handcuffs, and detaining him in the Franklin County Adult Detention Center from October 19, 2024 to October 21, 2024.

85.     Defendants' restraint was without legal privilege, justification, or probable cause, and was carried out under the asserted authority of law despite the absence of any facts supporting an arrestable offense particularly given that evidence from Greiner's patrol car shows officers conspired to "upcharge" Roberts by fabricating a false claim that Roberts placed Greiner in a headlock when no such event occurred.

86.     A reasonable person in Roberts' position would not have felt free to leave in that Roberts was arrested, transported, placed in handcuffs, and detained in a correctional facility against his will by Defendants.

87.    As a direct and proximate result of Defendants' false imprisonment, Mr. Roberts suffered loss of liberty, emotional distress, reputational harm, and other compensable damages.

### COUNT VII – Intentional Infliction of Emotional Distress
*Roberts v. Greiner and FCSO Officers*

88.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

89.    Greiner intentionally engaged in conduct that was extreme, outrageous, and beyond all possible bounds of decency when he aggressively escalated a non-violent  dispute between neighbors into a physical confrontation, grabbed Roberts in front of Massengale without warning, initiated a fight, threw him to the ground, and tased him twice, including once in the groin.

90.    Greiner's conduct was intentional and malicious, undertaken for the purpose of asserting dominance over Roberts, retaliating against Roberts for attempting to explain the situation, humiliating Roberts in front of Massengale, and covering up his own misconduct.

91.    Greiner's actions were compounded by the conduct of other FCSO officers who conspired to "upcharge"  with a felony based on a fictitious allegation that Roberts placed Greiner in a headlock—an allegation contradicted by video evidence.

92.    After the assault, Roberts was unlawfully arrested by Deputy Greiner and other FCSO Officers, jailed for three days, denied his prescribed blood-pressure and heart medication despite dangerously elevated vital signs, and denied the ability to shower or change clothing.

93.    Defendants' conduct was extreme and outrageous, exceeding all bounds tolerated in a civilized society, and was carried out with reckless disregard for Roberts' physical and emotional well-being.

94.    As a direct and proximate result of Defendants' conduct, Mr. Roberts suffered severe emotional distress, including fear for his life during the assault,  humiliation, anxiety,

14

trauma, physical manifestations of his symptoms including but not limited to sleep disturbance, ongoing psychological harm, and other compensable damages.

## COUNT VIII – Abuse of Process
*Roberts v. All Defendants*

95.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

96.    Defendants made an improper and perverted use of legal process by arresting, charging, and detaining Roberts for purposes unrelated to the administration of justice because Roberts had committed no crime.

97.    Defendants acted with an ulterior motive, including retaliating against Roberts, asserting dominance over Roberts, humiliating Roberts in front of Massengale, covering up the unlawful use of force by Greiner on October 19, 2024, and creating a false narrative to justify their misconduct.

98.    The legal process was used not to prosecute a legitimate offense, but instead to intimidate, punish, silence, assert dominance over, harass, and humiliate Roberts.

99.    As a direct and proximate result, Roberts suffered loss of liberty, emotional distress, reputational harm, economic damages, and other compensable injuries.

## COUNT IX -- Malicious Prosecution
*Roberts v. All Defendants*

100.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

101.    Defendants, acting individually and in concert, initiated and caused the initiation of criminal proceedings against Roberts by preparing, endorsing, and forwarding false and

15

misleading reports and statements alleging that Roberts placed Greiner in a "headlock" and committed felony battery on a law-enforcement officer on October 19, 2024.

102.    Defendants lacked probable cause to initiate or continue these proceedings in that the "headlock" allegation was fabricated, contradicted by video evidence, and created solely to justify Greiner's unlawful assault and use of force on Roberts.

103.    Defendants acted with malice and improper purpose, including (a) retaliating against Roberts for attempting to explain the situation; (b) covering up Greiner's unlawful assault and taser use; (c) shifting blame for Greiner's misconduct; (d) intimidating Roberts and discouraging complaints; and (e) manufacturing a false narrative to justify excessive force.

104.    Defendants' actions constituted a perversion of the criminal process, undertaken not to prosecute a legitimate offense, but to conceal wrongdoing and punish Roberts for asserting his rights.

105.    The felony charge against Roberts was dismissed, constituting a favorable termination for purposes of malicious prosecution under Kansas and federal law.

106.    Robert's later plea to a minor, unrelated misdemeanor does not bar this claim because the felony charge at issue was separate, fabricated, and terminated in Roberts' favor.

107.    As a direct and proximate result, Roberts suffered loss of liberty, emotional distress, reputational harm, economic damages, and other compensable injuries.

**COUNT X – Unlawful Seizure / Detention (42 U.S.C. § 1983, Fourth Amendment)**
*Massengale v. Deputy Greiner, Cpl. Wiscombe, Sgt. Hendrickson and Unknown FSRO Officers*

108.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

109. Greiner, Wiscombe, and Hendrickson unlawfully seized Massengale on October 19, 2024 at the Roberts residence in Rantoul, Kansas by blocking her movement, confronting her aggressively, and treating her as a criminal suspect without reasonable suspicion or probable cause.

110. A reasonable person in Massengale's position would not have felt free to leave in that uniformed and armed officers were blocking her movement and confronting her aggressively.

111. This seizure violated Massengale's Fourth Amendment rights.

112. Even without a case involving identical facts, the unlawfulness of Defendants' conduct was obvious and no reasonable officer could believe it lawful to or arrest a bystander who merely called 911 to report officer misconduct.

113. The constitutional violation was so clear that existing precedent placed the issue beyond debate.

114. As a direct and proximate result, Massengale suffered physical injury, emotional distress, economic loss, and other compensable damages.

## COUNT XI – Assault (Kansas Tort Claims Act)
*Massengale v. Deputy Greiner and FSRO Officers*

115. Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

116. Greiner, Wiscombe, and Hendrickson intentionally engaged in conduct on October 19, 2024 at the Roberts residence that placed Massengale in reasonable apprehension of imminent harmful or offensive contact, especially given Greiner's assault and battery of Roberts immediately before, in that they blocked her movement and confronted her aggressively.

117. Defendants acted aggressively, and as armed and uniformed officers had the apparent present ability to inflict such harmful and offensive contact.

17

118. Defendants' actions were without legal privilege or justification in that Massengale had committed no crime, was not involved with the situation occurring at the Roberts residence, and only observed same, posed no threat, and had only dialed 911.

119. Massengale did not consent to said Defendants' conduct, and a reasonable person in Massengale's position would have feared immediate bodily harm.

120. As a direct and proximate result of Defendants' assault, Ms. Massengale suffered emotional distress, fear, and other compensable damages.

### COUNT XII – Battery
*Massengale v. Cpl. Wiscombe, Sgt. Hendrickson and FCSO Officers*

121. Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

122. After Greiner unlawfully assaulted and battered Roberts on October 19, 2024, the scene was calm, multiple officers were present, and Massengale posed no threat, did not interfere with any officer, and had committed no arrestable offense.

123. Despite this, Wiscombe, Hendrickson, and other FCSO officers intentionally placed Massengale in handcuffs, physically seized her, and manhandled her, causing harmful and offensive contact.

124. Defendants acted intentionally in that they purposely made physical contact with Massengale and restrained her person, ultimately placing her in handcuffs.

125. The physical contact was harmful and offensive, as it involved forceful grabbing, twisting, restraining, and handcuffing of Massengale without legal justification.

126. Massengale did not consent to any physical contact by said Defendants.

127. Said Defendants' use of physical force was without legal justification or privilege, because (a) said Defendants lacked probable cause to arrest Massengale; (b) Massengale had not

18

interfered with any officer; (c) Massengale had attempted to obtain Greiner's badge number while calling 911 to request a supervisor; and (d) no reasonable officer could have believed that forceful physical restraint was lawful under the circumstances.

128.   Defendants' actions were unreasonable, unnecessary, and outside the scope of lawful arrest powers.

129.   As a direct and proximate result of said Defendants' actions, Massengale suffered physical pain and discomfort, emotional distress, humiliation, fear and anxiety, and other compensable injuries.

## COUNT XIII – False Imprisonment
*Massengale v. Cpl. Wiscombe, Sgt. Hendrickson, and FSRO Officers,*

130.   Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

131.   Wiscombe, Hendrickson and other responding and jail officers of the FCSO intentionally restrained and confined Massengale against her will by arresting her, placing her in handcuffs, and detaining her in the Franklin County Adult Detention Center on October 19, 2024.

132.   Defendants' restraint was without legal privilege, justification, or probable cause, and was carried out under the asserted authority of law despite the absence of any facts supporting an arrestable offense in that Massengale posed no threat, did not interfere with any officer, and merely dialed 911 after observing Greiner's assault on Roberts.

133.   A reasonable person in Massengale's position would not have felt free to leave in that Massengale was handcuffed, detained, and ultimately booked into and placed in a correctional facility against her will.

19

134.    As a direct and proximate result of said Defendants' false imprisonment, Massengale suffered loss of liberty, emotional distress, reputational harm, and other compensable damages.

### COUNT XIV – Intentional Infliction of Emotional Distress
*Massengale v. Deputy Greiner*

135.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully stated herein.

136.    Greiner intentionally engaged in extreme and outrageous conduct when he violently assaulted and tased Massengale's husband, Roberts, in her presence, despite knowing that neither Massengale nor Roberts had committed any crime and that the situation involved a minor, non-criminal neighborly dispute.

137.    Massengale witnessed Greiner initiate a fight, throw Roberts to the ground, and tase him twice, including once in the groin, causing Massengale to fear for Roberts' life and her own safety.

138.    After the assault, Wiscombe and Hendrickson intentionally and maliciously arrested Massengale without probable cause, handcuffed her, physically restrained her, and booked her into jail, despite knowing she had not interfered with any officer and had merely called 911.

139.    Defendants further inflicted emotional distress by confiscating Massengale's phone without a warrant and unlawfully retaining it for nearly a year, depriving her of personal property and causing ongoing anxiety and hardship.

140.    Massengale was then charged with misdemeanor theft—a charge unsupported by evidence and dismissed at the first opportunity—resulting in her suspension from employment for thirty one (31) days without pay, humiliation, reputational harm, and significant emotional suffering.

141.    Defendants' conduct was extreme and outrageous, exceeding all bounds tolerated in a civilized society, and was carried out with reckless disregard for Massengale's emotional well-being.

142.     As a direct and proximate result of Defendants' conduct, Massengale suffered severe emotional distress, including fear, humiliation, anxiety, trauma, loss of sleep, ongoing psychological harm, and other compensable damages.

## COUNT XV – Abuse of Process
*Massengale v. All Defendants*

143.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

144.    Defendants made an improper and perverted use of legal process by arresting, charging, and detaining Massengale and depriving her of her property for purposes unrelated to the administration of justice.

145.    Defendants acted with an ulterior motive, including retaliating against and humiliating Massengale, covering up the unlawful use of force by Greiner upon Roberts on October 19, 2024, and creating a false narrative to justify their misconduct.

146.    The legal process was used not to prosecute a legitimate offense, but to intimidate, punish, and silence Massengale for her purported involvement with the events that occurred on October 19, 2024.

147.    As a direct and proximate result, Massengale suffered loss of liberty, emotional distress, reputational harm, economic damages, and other compensable injuries.

## COUNT XVI -- Malicious Prosecution
*Massengale v. All Defendants*

21

148.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully stated herein.

149.    Defendants, acting individually and in concert, initiated and caused the initiation of criminal proceedings against Massengale on or about October 19, 2024 by preparing, endorsing, and forwarding false and misleading reports and statements alleging that Massengale interfered with the lawful conduct of Greiner and stole the $40 animal trap.

150.    Defendants lacked probable cause to initiate or continue these proceedings in that the allegations were fabricated, contradicted by video evidence, and were created solely to distract from, cover up, and justify Deputy Greiner's unlawful assault and use of force.

151.    Defendants acted with malice and improper purpose, including (a) retaliating against Massengale for attempting to reasonably summon supervisory assistance; (b) covering up Greiner's unlawful assault and taser use; (c) shifting blame for Greiner's misconduct; (d) intimidating Massengale and discouraging complaints; and (e) manufacturing a false narrative to justify excessive force against Roberts.

152.    Defendants' actions constituted a perversion of the criminal process, undertaken not to prosecute a legitimate offense, but to conceal wrongdoing and punish Massengale and Roberts for exercising their rights.

153.    The charge for which Massengale was arrested was never filed as a criminal charge, and the charge of theft for which Massengale was criminally charged was dismissed, constituting a favorable termination for purposes of malicious prosecution under Kansas and Federal law.

154.    As a direct and proximate result, Massengale suffered loss of liberty, emotional distress, reputational harm, economic damages, and other compensable injuries.

## COUNT XVII – *Monell* Liability
*Roberts and Massengale v. Franklin County and the FCSO*

155.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully stated herein.

156.    Franklin County is liable under 42 U.S.C. § 1983 because Plaintiffs' constitutional injuries were caused by the County's policies, customs, and practices.

157.    Franklin County maintained, condoned, or was deliberately indifferent to (1) a pattern of excessive force by deputies, including but not limited to that of Deputy Greiner; (2) a pattern of unlawful arrests and detentions without probable cause; (3) a pattern of retaliatory arrests to cover officer misconduct; (4) a failure to train and supervise deputies in de-escalation, use of force, lawful arrest standards, and proper handling of detainees; and (5) a failure to discipline deputies known to abuse their authority.

158.    These policies and customs, or the lack thereof, were the moving force behind the violations of Plaintiffs' clearly established constitutional rights.

159.    As a direct and proximate result, Plaintiffs suffered physical injury, pain, unlawful confinement, emotional distress, and other compensable harm.

## COUNT XIX – Negligent Supervision / Training
*Roberts and Massengale v. Sheriff Richards, Undersheriff Lasswell, and Franklin County*

160.    Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

161.    Richards, Lasswell, and the Franklin County owed a duty to properly hire, train, supervise, and discipline deputies and jail personnel to ensure that they exercised their law-enforcement authority in a lawful and constitutional manner when interacting with the general public and carrying out their job duties.

162. Defendants breached that duty by failing to adequately train officers in de-escalation, use of force, lawful arrest standards, detainee medical care, and proper handling of seized property; by failing to supervise deputies known to have a history of abusing their authority; and by failing to enforce policies designed to prevent unlawful arrests, excessive force, and mistreatment of detainees.

163. Defendants knew or should have known that the officers involved—including Greiner, Wiscombe, Hendrickson, and other FCSO personnel—posed a foreseeable risk of harm to the public.

164. As a direct and proximate result of said Defendants' negligent supervision and training, Plaintiffs suffered physical injury, emotional distress, loss of liberty, economic damages, and other compensable harm.

## VI.    PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in their favor and award:

1. Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiffs as a result of the Defendants' misconduct;

2. General damages for all past and future physical pain, mental suffering, and emotional distress suffered by the Plaintiffs;

3. Punitive damages to the fullest extent permitted by law;

4. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;

5. Pre- and post-judgment interest;

6. Such other further specific and general relief as may become apparent from discovery as this matter matures for trial; and

7. Such other further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury on all issues so triable.

Respectfully submitted,

VAN OSDOL, PC

By: /s/ Anthony L. Gosserand
Anthony L. Gosserand    KS #15676
Roman K. Panickar       KS #30146
2600 Grand Boulevard, Suite 630
Kansas City, Missouri    64108
Telephone:    (816) 421-0644
Telecopier:   (816) 421-0758
tgosserand@VanOsdolKC.com
rpanickar@VanOsdolKC.com

ATTORNEYS FOR PLAINTIFFS
RICKY ROBERTS AND SHERRY
MASSENGALE

25